Good morning ladies and gentlemen. The first case this morning is Costello v. BeavEx. Mr. Just a real quick procedural matter. I'm going to be speaking first. We have dueling appeals here as your honors know. I'm going to be speaking first on BeavEx's appeal and then I'm going to be ceding the floor to my colleague Mr. Duddleston on the case on the matter in which we're an appellee. Okay. The first issue before the court today is whether the very broad definition of employee contains- Mr. Duddleston is going to- Sorry. Make your initial argument rather than rebuttal. Mr. Duddleston is going to make the response argument to Mr. Licton's dueling appeal. I'm going to reserve three minutes for my rebuttal. Sorry. So the first issue that we're dealing with here today, your honors, is whether the very broad definition of employee that's contained within the Illinois Wage Payment and Collection Act is preempted by what we call the FQA, the Federal Aviation Administration Authorization Act. BeavEx, the defendant in this case, my client, believes that the FQA does preempt the FWPCA and we believe that result is consistent with and a pattern of Supreme Court and circuit court cases that have found the FQA's preemptive power to be both broad and sweeping. The district court disagreed with us and denied BeavEx's motion for summary judgment on the preemption issue. We respectfully assert that the district court got that wrong. What do you make of the fact that the S.C. Johnson case specifically stated that state laws of general application such as wage laws are not preempted by the FAA? We call it the FQA for simplicity's sake. Good question, your honor. And that's where you kind of prefigured where I was going. The error that I saw that the district court made below, which leads into what you're talking about, is this notion of the F of the IWPCA's definition of employee as a law of general applicability. The Supreme Court has told us that generally applicable laws can be preempted. They just said that recently in Northwest v. Ginsburg on the duty of good faith and fair dealing tort. The difference between this law that we're talking about here and a typical law of general applicability is that this law doesn't simply govern the employment relationship between an employer and its employees. In this case, it mandates the creation of an employment relationship. In other words, we, BVEX, have chosen and our drivers have chosen to engage as independent businesses contracting with one another. What the IWPCA mandates is that we hire these drivers as employees. It doesn't regulate generally, it doesn't set these generally applicable rules governing the workplace. It creates a workplace in a sense. For example, as we've pointed out in our briefing, BVEX actually has some employees in Illinois. And with regard to those employees, there are nine of them. Nine employees, nine full time, one part time. And we comply with the IWPCA with regard to those employees. Yeah, but would you agree that a state's minimum wage, would you agree that state minimum wage laws are preempted? That state minimum wage laws are preempted? Yeah, yeah. What I'm trying to figure out is how this is different from a state minimum wage law. Totally understood. So let me try to clarify that a little bit. The state minimum wage law tells me that if I'm going to hire people as employees, I have to pay them a certain amount of money, okay? That's the sort of thing that generally regulates, generally governs what the law looks like in the workplace. I have to pay them a certain minimum wage. I can't discriminate against them based on the color of their skin, their age, their gender, that sort of thing. And that applies to, and we make, we're not arguing here today that those sort of laws are preempted. What we're arguing is that this law is different. It goes a step further. It tells us not how we manage that workplace. It tells us how we provide our services to our customers. And it mandates the creation of that very workplace that those background laws you've just described seek to regulate. So in other words- Yes. Go ahead, Your Honor. No, you go ahead. Sorry, okay. You need to tell- Right. So, I mean, so our argument, I mean, the key error that the district court made, and what we've been talking about, Your Honor, goes right to that. Because Judge Kendall said that was the crux of her decision, was this idea that the IWPCA's definition of employee is nothing more than a background law. That it stands too tenuously related to the services, prices, and routes of BVEX. I can give you an example of why that's not the case. BVEX has something called an on-demand delivery service, which is described in our briefing. The on-demand delivery service is one where we run deliveries for banks, for pharmacies, things like that. They may need, say a pharmacy needs a medical shipment from the north side of town to the south side of town. They need somebody there like that. So they need somebody who can drop what they're doing, be to the bank in ten minutes, and go drop it off to the south side of town. With contractors, you can do that, because we don't have to pay them so-called engaged-to-be waiting time. Whereas if we had employees, we would have to be paying them for all that time that we've basically engaged them to be sitting there waiting to drop everything at the drop of a hat. Look, the First Circuit has said that the dividing line in preemption cases now I'm going to quote, is between state laws that regulate how a service is performed, those are preempted, and those that regulate how a business behaves as an employer or proprietor, not preempted. And that seemed to me to be an apt distinction. And it's one that you've glossed over in the brief, it seems to me. Okay. I disagree, but I will address that. Of course you disagree. That's why we're here. So as I've said, take for example the employees that BVACS actually does have in Illinois. We have nine of them, nine full-time, one part-time. We have 100 and some odd drivers, all of whom have contracted to be independent contractors with us, right? They're businesses, we're businesses, we contract together. There's no argument that we have employment law responsibilities toward companies that we contract with, the people we contract with to clean our facilities, mow our grass, that sort of stuff. Those laws, those regulations apply only to employees. What we're saying here is that we don't dispute that those laws apply to our employees. We're saying the drivers are not our employees, but this IWPCA defines the term employee so broadly that for purposes of payment of wages, the essence of an employment relationship, the essence of a business relationship, it makes them. Yeah, I see now where we really, where you and I are a bit apart. Okay. And it's here. It doesn't matter, it seems to me, that the IWPCA, you are so lucky that George Easterbrook isn't here. He can't bear it when acronyms are used. I'm a horrible trade guy. That was a lesson for, you know, next week or whatever. That it doesn't matter that it affects BVEX's business model of employment relationships. The relevant question, it seems to me, is whether the law relates to the prices routes and services the motor carriers offer to their clients. And look, many laws that regulate labor and zoning, health, safety, and other things that are integral to business will increase the cost of doing business, but that doesn't necessarily create a preemptive effect. Totally understood, Your Honor. And it's kind of where I was going with that argument about the on-demand delivery services. We can provide those because we have people that we don't have to pay this waiting time to. We don't have to pay STEM miles to. We don't have to pay them when they drive to and from our facilities, to and from the client sites to go get things. That's- But the IPCA doesn't concern the transportation of property. No, but it concerns the payment of wages to individuals, which is the essence of the labor relationship. And it says that if you're going to engage with somebody who is performing services that are in the usual course of your business, you can't contract with them. I mean, the IWPCA, as written, if applied, would completely eliminate the owner-operator model of trucking within the state of Illinois. Well, am I wrong if I think that the plaintiffs are merely challenging a wage matter between BVEX and its drivers? And that the state of- Am I wrong? Well, I believe you are, Your Honor, because what the plaintiffs are doing is seeking to substitute this Illinois law that defines employees as a replacement for what they contractually agreed to, which is to operate as owner-operators rather than as employees. And I see that I'm stepping into my rebuttal time, so I'm going to cede and deliver over to my colleague, the cross-peel. Thank you, Your Honor. Are you going to argue class certification? Yes, Your Honor. Is that why you're here? That's- I'm here to argue- I'm here to praise Judge Kendall's decision to the extent she got it absolutely correct on the issue of class certification for two reasons. First and foremost, our argument is there is a procedural bar in this instance that plaintiffs simply cannot overcome, and that is the well-established, long-prevailing law in the Seventh Circuit on the rule against one-way intervention. For whatever reason, they made a strategic decision early on in this case to seek a merits ruling in this case. The law in the Seventh Circuit says, once you do that, you forfeit the right to seek class certification. And the policy reason behind it comports with common sense and simple logic, which is, in a class certification setting, once a court hands down a decision on the merits, it automatically creates a situation where putative class members, potential members of the class, are informed with respect to the potential outcome of the case, which would constitute one-way intervention by a plaintiff. But here, forgive me, but here, um, the plaintiffs claim that given the common evidence regarding the nature of BVEX's business, either all of the drivers are employers or all are independent contractors. And it seems to me that that is just the sort of overlap of merits and class action that is permitted. MR. WHEELER. You are correct, Your Honor. That's the second— JUSTICE KAGAN. And, you know, if later on the merits inquiry had ended differently, the court could have decertified the class, right? MR. WHEELER. Yes, procedurally, the court could have later decertified the class. The problem that the court was facing, and Judge Kendall correctly recognized this issue, is she was precluded from certifying the class after taking up a merits issue. The two issues are related. My argument—my two arguments are related, but one is a procedural bar, and one is an argument on Rule 23 class certification in general. The procedural bar is very simple. Once you seek an issue— once you seek a determination on the merits, which they did and they obtained in their favor, everyone sitting on the sidelines, waiting to decide whether or not to opt in or opt out of this class and join this potential class, should it be certified, now has, even though it's not race judicata in the sense that it would not be controlling because they were not members of the class at the time that the summary judgment was entered in their favor, it certainly pretends for them to implicate the fact that if I were to join this case, I'm much better off than if I were to do it on my own in a subsequent case. That's the policy reason behind the rule against one-way intervention. It's the reason why the rules were amended. What about— Go ahead. No, I'm sorry. I didn't mean to— I'm interrupting everyone today. What about the language from the Walmart and Comcast Supreme Court cases that talk about how an inquiry on class certification is often meshed with merits inquiries? How do you address those cases? Because those cases are easily distinguished. In fact— And I can't do it? Well, here's the way to do it. Those cases are not saying— they don't eviscerate the rule against one-way intervention. Again, one's a procedural bar, which is what I'm arguing first and foremost. They can't come up here and argue, certify this case, because unless the summary judgment that they obtained is vacated, procedurally, they are barred. What Your Honor is actually pointing to is why these two arguments are related. If— And the Comcast case specifically addresses this. All that case is saying is a court can take a peek at the merits and say, if we look at the commonality and the common evidence that would be presented, if this case were certified for class treatment at trial, we can look a little bit into the future and say, yes, we could probably reach a result based on common evidence, but that's all that Comcast is saying. It by no means eviscerates the procedural bar, which is a ruling, not a peek, right? The analogy is they're not asking you to take a peek at the merits. They're asking you to stare at the merits until it is burned into your eye and basically say— It's dramatic. Basically say— No, but basically say this is a results-oriented approach. We're going to win on the B-prong of the Illinois— I'm not going to use an acronym— Illinois Wage Payment Collection Act. So you should go and certify this class because we're results-oriented. Factually, that's not even true because if you think about it, the only thing they've established by obtaining the summary judgment on behalf of three plaintiffs in this case, other than informing putative class members down the road who may want to decide whether to join the class or not, they still have to address the other issues in the case. The other parts of the Illinois Wage Payment Collection Act, for example, will require a jury or the fact finder ultimately to determine, for example, whether or not the deductions taken from the settlement checks or if they're determined to be employees from their paychecks, whether or not those benefited the employees. Those are still individualized inquiries. The only thing they're essentially doing— One way of saying it is by prevailing on the B-prong test, they've essentially said, we can now identify every member of this class. It's every driver in the state of Illinois. That doesn't mean what they're wanting you to believe it means, which is we win on the B-prong, therefore ignore the rule against one-way intervention and go straight to the results. We win. That's why you ought to certify the class because we've already obtained the liability ruling. That isn't true. They still have all of the issues associated with class treatment, which is providing common evidence on the prong one and prong three, which they can't ignore. That's the law. The mystery behind all of this is they're wanting you to say, don't look at prong one and prong three, which is what BVEX is entitled to under due process to try with— on a case-by-case basis with putative class members. They're wanting you to say, ignore all of that. Don't look behind the curtain. Ignore that man behind the curtain. We will win on the B-prong, so let's certify this class and be done with it. That is contrary to well-established, prevailing Seventh Circuit law. And so when my esteemed colleague comes up here and argues, as common sense might dictate, let's just look at this in the big picture. We're going to win on the B-prong. Let's just certify this class because we're going to prevail. We don't take shortcuts like that. We don't ignore prevailing Seventh Circuit law, which says you can't do that. In order to do that, you would have to effectively say, you're going to win on the merits. Let's certify this class. And that's not what the law says. Am I into rebuttal time at this point? One minute. Okay. Essentially, in sum, I guess what I would say is they're now asking to have their proverbial cake and eat it too. The dilemma they face is extraordinary. They're asking this court to certify, essentially, a putative class based on what they point to as a key predominating common question, whether pronged to the Illinois Wage Payment Collection Act has been met. That determination could only have been made by the trial court as a matter of law, as a matter of law, if the trial court denied the motion for class certification in order to comply with well-established law that they cannot overcome with a single case at all. So the only way they can now certify the class is to unwind the summary judgment. But no one's appealing that. They haven't moved to have it vacated. They made their decision early on to move for a ruling on the merits. They did so at their own peril. Seventh Circuit law says you can't get this class certified. Thank you. We'll reserve the rest of our time for rebuttal. Thank you, counsel. Thank you. Mr. Lichten? Yes, if it pleases the court, my name is Harold Lichten. I represent the plaintiffs. It's always very interesting when someone tells you what you're arguing when in fact that's not what you're arguing at all and it's not what the court found. It's what they want you to believe we're arguing because it fits into their argument. First, to address some of the questions you had, Judge Brovner, you're exactly right with respect to the F-Quad A. The courts have drawn a dividing line on the F-Quad A. And that dividing line is between where enforcement of the statute of regulation would directly affect the prices, routes, or services because that's what you're challenging. And I'll give you some examples of that in a second. And when the enforcement of a regulation or statute does not directly affect the price, route, or service but has to do with a wage or a zoning law that might have an effect on prices, routes, and services as do all background laws but do not directly affect that. Now, there are a couple of recent cases that make that point, I think, crystal clear. We've cited to you recently in our notice of supplemental authority the Pack Anchor case. That was a case by the California Supreme Court that found an identical challenge that there was no F-Quad A preemption to the fact that the plaintiffs in those cases were challenging their misclassification as truck drivers under the F-Quad A. They were found to be employees, not independent contractors. And the Supreme Court of California, as did the Federal District Court most recently in the California case Excel that we just cited to you, said that there is no direct effect on prices, routes, and services. This just has to do with the status of these individuals as employees. Well, BFICS pointed out that two pieces of state-level legislation that bar motor carriers from using independent contractor-based business models have been reviewed by federal courts of appeals, and both have been held preempted by the F-Quad A. I don't know what cases those are, Your Honor, because in DeFiori, a case my firm was involved in the First Circuit, the court found that there the attack was to how the baggage handlers at the airport, who when you drive up, the plaintiffs in that case were trying to change the service. The court said in DeFiori specifically that if it was just relating to the wages of the individuals, there would have been no preemption. So I disagree that there's any case in the United States that has found that a wage law is preempted, except the District Court case in Massachusetts, which is currently on appeal and about to be argued. I just have a note about it. It would take me a very long time to look through the briefs, so put that aside. So what I was going to say, Your Honor, that the second case just very recently came down, which is an appeals court case in California, was where ironically- Is that the letter we received five minutes ago? No, I think it was a couple days ago. No, I got it five minutes ago. No, but that's a different case that just came down. Oh, okay, thank you. In the other case, that's the DHL case from the California Court of Appeals, the plaintiffs were challenging the fact that DHL was charging customers for a fuel surcharge when in fact they were using independent contractors and therefore they weren't paying the fuel service charge. And the appeals court, in distinguishing PAC-ANCHOR, said, well, in PAC-ANCHOR, the only issue was what the person gets paid for wages. But here, the plaintiffs are challenging the price, the actual price that's being charged, and that's forbidden under the F-Quad-A because that relates to prices, routes, and services. And that's a logical way, the way all the cases have looked at the question. Is there a direct impact on prices, routes, and services? If there is, then you would have F-Quad-A preemption. But if it's only an effect on background laws that may incidentally drive up prices, then there's no F-Quad-A preemption. That's what the Ninth Circuit held in Mendonca. That's what the First Circuit said in De Fiori. That's what the recent Federal District Court in California said. And therefore, I think that is the appropriate dividing line. Now, it's very important that you understand... Well, let me move on to something else. The other thing about F-Quad-A... What is it important that I understand? No. What? What is it important that we understand? Well, I was going to go to class, sir, but I want to finish my... I'm sorry. I wanted to finish my argument on F-Quad-A. Under the F-Quad-A, there is a strong presumption that when states are engaging in the enactment of basic laws to protect the public, such as wages, that there is a strong presumption against preemption. The U.S. Supreme Court has said that time and time again in Wyeth and many other cases. And that is... And that's been the law with respect to ERISA preemption. And ERISA preemption cases follow the relate-to language of the F-Quad-A. And in many ERISA cases that we've cited to you, laws tangentially affect the benefits that workers get, but they don't directly affect it. And that's the same issue here. The devil's own handiwork, ERISA. By limiting your claim to the narrow range of the IWPCA, are you abandoning the claims for unpaid overtime and commuting time, the costs of maintaining vehicles, workers' comp, you know, that sort of thing? Okay, well, that's a good question, Your Honor. And that really sort of gets to class certification, but it also gets to F-Quad-A. It's a hybrid question. Yes. Here's the thing. The IWPCA has its own definition of what an employee is. That's different from the definition of employee for overtime purposes. The overtime statute is a more traditional statute that you find everywhere in the country under the FLSA, the economic realities test. In this case, the IWPCA only defines a very few things. That is, when wages can be deducted or not deducted. That's the only thing that we're challenging in this particular motion for class certification, and which is an issue before you on the F-Quad-A. They haven't moved for F-Quad-A preemption of the overtime and minimum wage claims that are in the case, but for which we didn't move for class certification. Because they may involve more individualized evidence. In this case, the only thing that the IWPCA says is that if you're going to agree to pay someone some money, then you can't start taking that money out of their compensation if you don't like something that they did, or you want to make them bear the expense of certain things that you want them to bear the expenses. That's the only thing that this definition involves. It's not like the case, the Mass Delivery Association case, where the definition, the three-pronged definition that they were so concerned about in that case involved many, many labor statutes. Meal breaks, rest breaks, overtime. The only thing- Are you talking about Coakley? Coakley, yes. Okay. Yes. The only thing that the IWPCA says is that if you agree to pay someone some sort of compensation, you don't even have to call it wages, you can't, for the purposes of the IWPCA, start taking that money away from people. It's a basic wage statute. So that has such a limited effect on prices, routes, and services because they can still, for the purpose of the IWPCA, continue to have these workers do exactly what they do, pay them the way they pay them. They just can't deduct money from their wages. They talk about wait time on on-demand driving. There's nothing in the IWPCA that says that you have to pay someone for wait time. And in fact, under Illinois law, you don't have to pay someone for wait time. If these people were really independent contractors that could just sit around and pick up a job when they heard the call, come in, and then take the job, you're not entitled to compensation for wait time. So they raise a red herring. This only involves the IWPCA, which is very narrow. If so, if ever there- BPHC claims that there's no apparent way for an Illinois motor carrier to effectively utilize independent owner operators while simultaneously meeting the IWPCA's independent contractor exception. Well, first of all, that's not true. And it's very important to understand as much as I'd like to make you believe it, the IWPCA is the only statute we're dealing with that has this three-pronged definition. That three-pronged definition doesn't define employee for any other purpose in Illinois. It doesn't- Overtime and minimum wage is different. Other statutes are different. Discrimination statute, the test is different. So the only thing- They can still continue to use the workers just like they're using them now. They simply cannot deduct money from their wages without their express authorization at the time the deduction is made. That's all the IWPCA says. So it's just incorrect to say that they can't have any employees. They can do exactly what they're doing now. They just can't take money out of their checks. I'd like to, if possible, move to Class Cert. First of all, what my brother said about how this case proceeded is just simply incorrect. When Judge Kendall denied Class Certification, she did not deny Class Certification because of the one-way intervention doctrine. And to the extent that they're arguing that we move for summary judgment first, that is simply untrue. The case was filed in October of 2012. Discovery wasn't even over when the defendants decided to move for summary judgment on F-Quad A. We didn't even have Discovery over. Nevertheless, because there was a deadline to file dispositive motions by October, we responded to their motion for summary judgment with our own motion for summary judgment, and at the same time, we moved for Class Certification. So this isn't the situation where someone is waiting on the lines, on the sidelines, not moving for Class Certification and then trying to move for summary judgment to get a victory first. We were under a procedural obligation to move when we did, and we said in our reply brief at that time, look, Your Honor, if one-way intervention is a concern to you, you can simply decide Class Certification, which is pending before you, first, and then move on to summary judgment. And that's, in fact, what Judge Kendall did. She decided Class Certification first, in her opinion, and then went on to decide summary judgment for the plaintiffs, giving them in their favor. See, what I've been trying to figure out here is if we allow plaintiffs to use the grant of a partial summary judgment to answer the question of predominance, aren't we encouraging plaintiffs to wait and see how a judgment turns out before seeking Class Certification? No, because one, we did not do that, Your Honor. We moved for Class Certification at the same time, and she addressed Class Certification. So we were willing to take our lick either way. Yeah. In addition to that... It was very odd. Well, either way, you mean preempted? Yes, if she had ruled against us on preemption, granted Class Certification, all the claims of all the class members would have evaporated. We might have appealed, but they would have evaporated. When you read Judge Kendall's opinion, what she really did, and this is important, and this is the legal issue that I think warrants consideration by this court, is that she said, based on what Judge Miller said in the Northern District of Indiana case in FedEx, which has since been appealed somewhat successfully, she said, I don't believe that I can look at the merits, not for the purposes of giving you summary judgment, but to determine whether or not I can decide this issue on common evidence. We weren't asking her, as my brother claims, to decide summary judgment in our favor and then apply it and say, see, we went on summary judgment, apply it to the class. It's common evidence. Your Honor, we were doing what you've said, Judge Ravner, in your two most recent decisions in Chicago Teachers Union and in the PNC case. We were saying that, Judge Kendall, you should look at prongs one, two, and three, not for the purposes that we win, although great if we won, but for the purpose of seeing if you can decide each of those prongs based upon common evidence. Now, prong two, even if you don't decide the merits, you at least know that you're going to be able to decide that issue on common evidence because it only looks at the employer's operation and the nature of the employer's business. There's nothing that's individualized. Secondly, when you look at the Illinois definition under the third prong, whether or not the individual has an independently established trade or business separate and apart, Illinois courts have made clear that you look at two things. Does someone have a proprietary interest in the roots? Clearly, that could be decided based upon common evidence, and clearly, these individuals don't have a proprietary interest. They can't sell their roots. They don't own the roots. And secondly, under prong three, the question is whether you can perform the service without hindrance from the company that you're doing business with. And clearly, where you have a situation like this, where the workers are entirely dependent upon BVEX, BVEX sends out the invoices to its customers, not the individuals. BVEX sets the prices. BVEX sets the requirements in their contract. BVEX makes them use BVEX's DOT number, Illinois Commerce Commission number. All of these factors don't mean that we win, although I think we would win, but what they show is that you can decide prong three based on common evidence, and that's the inquiry, which is really the important inquiry in deciding class certification. And finally, with respect to prong one, I think my brother and the court read that prong improperly. That prong actually has two issues, either one of which require a determination of whether employment status can be decided on a common basis. The first is whether or not they've reserved the right to control. Well, the issue of right to control is an issue that many courts in the United States have found are deserving of class certification. All of the 20 cases where Judge Miller in the FedEx case issued class certification, it was because those statutes were right to control, because in a right to control test, you're looking at the contracts and the policies that the company has implemented. You're not looking at how they've actually implemented that in fact. The second part of prong one, because it says and in fact in the prong one of the test, that we concede may require individualized evidence, because by its nature, it says and in fact. So what you have is, if you peek at the merits, you could see that three out of the four tests, independently established trade or business, part of the usual course of business, and right to control, all of those are almost certainly, but not definitely, certainly going to be decided on common evidence. And one, in fact, may not. What Judge Kendall said is, because I'm not going to look at the merits very deeply at all, because I can't, I don't know that we won't get to that in fact. So because there's a possibility we'll get to the in fact prong of the first prong, I deny class certification altogether. At this point, how many plaintiffs are we talking about? How many individual plaintiffs? I believe there are four individual plaintiffs. There are others, but because they're part of the class right now, and there's tolling right now, we haven't brought them into the case, but there are four or five plaintiffs. But so would there be nine in the classes? How many individuals are in the class? No, there are about 700. Oh, there are. Yes, so according to the data... I wondered where that nine came from. You list three in your caption. Yes. Yeah, I just wondered where that number nine, that's... Right. According to BVEX, they currently have, at the time they wrote the brief, they said they had 104 drivers at the time they moved for summary judgment contractors. They had 284 routes. Many of the contractors run several routes. I just would like, although they haven't brought it up, I'd just like to make one point about that. They suggested that there could be individualized evidence under prong three, because some of their contractors just drive a route day in, day out, full time for BVEX. And then they point to two affidavits of individuals who said, well, we have these companies and we have 10 or 15 drivers. Well, those people aren't part of the class because the class is properly defined, it was defined in FedEx, is all individuals who drive full time for BVEX. And if you look at BVEX's website, which is in our motion for class certification, they specifically say, in areas where we don't have the population to justify the number of deliveries, we use something called agents. When you look at where these two affiants are from, they're from very rural, I understand I'm not from Illinois, I understand these are rural areas of Illinois. So it's a red herring. If you take their affidavits away, BVEX has provided nothing to show that these drivers aren't all in the same boat. They do the same thing. They're subject to the same requirements. They use BVEX, they have to wear BVEX's uniforms. They have to have signage on their cars. Everything is entirely uniform. And that's why I think class certification, if ever there were a case, this is appropriate. And the last thing I want to say is, if Judge Kendall's opinion were correct, that you can't get too far in the merits, and Illinois has enacted this very important protective wage statute that says you can't make deductions. And if you adopted the opinion that because of the in fact part of prong one, you could never get class certification because there could be individualized questions in that prong, then essentially you're saying there could never be a class action under the Illinois Wage Payment and Collection Act where the question was whether individuals were clearly misclassified. And that would be really a shame. And I don't think that's what the legislature intended. I don't think that's what this court would have intended. That's all I have, unless there are any questions. No. Thank you. Thank you. Thank you. Your Honor, there's a few quick points to rebut on the FQA issue. Counsel had said he didn't know which two cases you were referring to, Your Honor. It was the MDA, the Massachusetts Delivery Association, Association v. Coakley case, a case whose operative language about being the usual course of business is one that plaintiffs said until the First Circuit reversed it was substantially identical to the case at issue here, to the language at issue here. The second one was the American Transportation Association v. City of Los Angeles case. A few points. The IWPCA, my brother counsel, indicated that it only regulates whether wages can be deducted. That's not true. The law itself, actually that's what they're suing about, but what it regulates is whether, when, how, and how frequently wages must be paid. It treats this as a, it's a wage payment law. If you look at the Illinois Administrative Code, it's lumped under the same rubric as the regulations that put in place the Illinois minimum wage law. The suggestion that one can be an employee for purposes of the IWPCA but not an employee for purposes of the other laws here in the state is one that the district court in that Coakley case on remand completely dismissed with. You can't be kind of an employee. It's like being kind of dead or kind of pregnant. I mean, you either are an employee or you're not an employee. And the court on remand in the Coakley case recognized the burden that that would place on employers. Two things in the PAC-ANCHOR case and the XL case that counsel submitted as supplemental authority go right to the heart of what we're talking about. In both of those cases, the reason that the court found the laws not to be preempted, and I'll read directly from PAC-ANCHOR. The court said, as we have noted, defendant's claim is factually inaccurate because the UCL action does not encourage drivers to use employee, or does not encourage employers to use employee drivers rather than independent contractors. Defendants are free to use independent contractors as long as they are properly classified. The proper classification isn't an issue in this case. The difference between this case and the XL case and the PAC-ANCHOR case is that under the IWPCA, it is legally impossible for BVACs to use owner-operator independent contractors as drivers. We have to use, we have to classify them as employees. That's the big defining difference between this case and the Harris versus PAC-ANCHOR case. It's the big defining difference between this case and the XL case, and it goes to the heart of why this case, or why this law should be preempted. I think Your Honor hit on a good point earlier when she was asking me about this idea of this bright line. This law doesn't directly, the IWPCA doesn't directly regulate services, but the Supreme Court has told us on multiple occasions, most recently in Ginsburg, that it doesn't need to do that. That was a good faith and fair dealing tort. There's no argument that that directly regulates prices, routes, and services that motor carriers can charge. However, it does have an indirect impact, and I'm telling, I'm saying in the evidence that we presented would show it would require us to spend $185,000 at least hiring and staffing up an HR position because we'd go from having nine employees to over 100. We would have to comply with medical leave laws. We would have to comply with minimum wage laws.  would have a logical financial impact on BVACs, and I see that my time is up. Thank you very much for your attention. Thanks to both counsel, or all counsel. The case will be taken under advisement.